## STARK BANK *v.* U. S. POTTERY COMPANY.

*Corporation. Directors. Ratification. Usury. Evidence.*

The assuming of a debt against a third person is not within the ordinary powers of the treasurer of a corporation. It is not in the usual course of business, and some special authority so to do must be shown.

The facts disclosed in this case do not show any special authority.

The directors of a corporation have not power to assume such a debt except in case of urgent necessity, which is a question of fact for the jury.

Although such urgent necessity exists, still when there were only seven directors, and it appeared that three of those, who were relied upon to make a majority assenting to assuming the debt, were liable on the debt assumed, *held,* it must further appear that they acted in perfect good faith to the corporation, and that this was a question for the jury. .

When it appeared that the debtor transferred a large amount of stock to the defendants a few days after the debt was assumed as security for his indebtedness to them, but it also appeared he owed them a large sum besides the debt; *held,* that the receipt of this stock could not be treated as a ratification of the act of assuming the debt, in the absence of proof that it was received as security for this particular debt, and that this was known to the directors.

When a witness testified that he supposed a note, by the laws of New York, was void for usury, but there was no evidence as to the provisions of the New York Statutes or what constitutes usury by the laws of that State; *held,* that the court did not err in not directing the jury that the note was void for usury, although it was payable at Troy, N. Y., and was discounted here at 8 per cent.

ASSUMPSIT on three promissory notes, one for five thousand dollars, one for six hundred and eleven dollars and twenty-eight cents, and one for two thousand two hundred and forty dollars and thirty-eight cents. Plea, the general issue.

No defence was made to the two first notes. As to the other, it appeared that in the fall of 1857 the defendant had been doing business for a number of years with the plaintiffs, and had borrowed money of them from time to time to a large amount, for the purpose of carrying on their business, under a guaranty to the plaintiffs signed by one Archer. In September, 1857, the directors of the defendants' company were seven, among whom were Archer, Fenton, and Johnson. Gager was the treasurer, and

also selling agent at Boston. Johnson was selling agent in New York, and Fenton at Bennington. At this time the defendants were indebted to the plaintiffs for five thousand six hundred dollars. The plaintiffs also had paper against Fenton individually, endorsed by Gager and Johnson for two thousand two hundred dollars and fifty-nine cents. On the 28th of September, 1857, the defendants being embarrassed, asked an extension on their liabilities to their creditors. The plaintiffs wrote Gager at Boston, assenting to the extension, provided the corporation would assume the debt from Fenton to them. In November, 1857, Gager replied, agreeing to this proposition. Soon after, Fenton gave the plaintiffs three notes signed "U. S. Pottery Co., by C. W. Fenton, agent," payable to Fenton or order at Troy, N. Y., and by him endorsed, which were discounted at 8 per cent. by the plaintiffs. These notes included the amount then due from the defendants to the plaintiffs, as well as the Fenton debt. Fenton, Johnson and Gager also executed a guaranty to the plaintiffs for the payment of the notes. The old notes were not then given up, but a few days afterwards Rhodes, another director, called and took them. The notes fell due in February, 1858, when Gager took them up by giving renewal notes signed "U. S. Pottery Co., by O. A. Gager, Treasurer."

There was no evidence of any express authority by vote of the corporation to either Fenton or Gager, to assume the debt of Fenton, or assenting to the proposition of the bank that they should assume the debt; but it appeared that Fenton had sometimes executed the defendants' notes as agent, and that Gager was accustomed to negotiate loans and execute notes and bills for the defendants in the usual course of business, which was always assented to by the directors, but neither of them ever executed the defendants' notes for the debts of others before.

It also appeared that Fenton, the debtor, on the 23d of November, 1857, transferred to the defendants one thousand one hundred and ninety shares of stock as security for his indebtedness to them, which was a large sum besides the debt assumed by the defendants, as above stated.

The defendants requested the court to charge the jury as follows :

11

1. That the facts not being in dispute, and the evidence not conflicting, there was no question for the jury.

2. That upon the facts as appearing, the plaintiffs were not entitled to recover upon the note for two thousand two hundred and forty dollars and thirty-eight cents.

3. That the note having been given for the private debt of C. W. Fenton, with which the defendants had nothing to do, and for which they were in no way liable, the defendants were not bound by the note unless Gager had authority to give it.

4. That no such authority was shown.

5. That the transaction was usurious, and the note therefore void.

But the court, KELLOGG, J., presiding, directed a verdict for the plaintiffs, to which the defendants excepted.

*G. W. Harmon* and *T. Sibley*, for the plaintiffs.

*A. P. Lyman* and *E. J. Phelps*, for the defendants.

PECK, J. This action is against the defendant as maker of three promissory notes, dated at Bennington, February 15th, 1858. The defendant makes no defence to two of the notes, but denies its liability on the other, being the note for two thousand two hundred and forty dollars and thirty-eight cents.

The first objection on the part of the defence, is that the treasurer who executed the note in behalf of the company, was not authorized thus to bind the defendant.

There can be no doubt of the authority of Gager, the treasurer, to execute notes in behalf of the company in the ordinary course of business, if he had previously acted as the financial agent of the company, and been in the habit of borrowing money, executing notes, drawing drafts and accepting bills, etc., in behalf of the company, with the knowledge and sanction of the directors of the company, as the evidence tends to show, but it still remains to be seen, whether the note in question, under the circumstances of the case, came within the scope of his powers. We think not. It was not in the ordinary course of business, and, to give validity to the note in question, some special authority must be shown or some ratification of the act

by the company or its directors, especially as the note was given for the debt of Fenton, on which Gager was holden as surety, and with which the company had no connection, and as Fenton, who was an agent of the company, acted in concert with Gager in substituting the note of the company for their liability.

The evidence, as appears from the minutes of the testimony referred to, tends to show that the bank on or about the 14th of November, 1857, held several notes against the Pottery Company, amounting to about five thousand six hundred dollars, which had accrued under an arrangement with the defendant by which they discounted its notes from time to time, and also held a note against Fenton of about two thousand two hundred dollars, on which Johnson, one of the directors of the company, and said Gager were holden as indorsers, but with which the company had no connection. Johnson was also the selling agent of the company in New York, and Gager the agent in Boston, and Fenton at Bennington, where the business of the company was carried on. In order to procure an extension or continuance of the loan of the company at the bank, Gager agreed with the bank to give the note of the company for the amount of the Fenton debt, and in pursuance of that agreement, Fenton, who it appears had been in the habit to some extent of executing notes on behalf of the company, executed a note to the bank for the Fenton debt, and the loan to the company was thereupon extended or continued. The note in question is a renewal note, substituted for the one thus executed by Fenton in behalf of the defendant.

All this, it appears, was known to the bank at the time of the transaction. There was no evidence that either Fenton or Gager had in any other instance used the name of the company as surety or in assuming liabilities of others; and in relation to Gager, the evidence tends to show that this is the only instance of such use of the company name.

Under these circumstances and the other facts appearing in the case, we think the agency of Fenton and Gager did not authorize them, or either of them, to pledge the credit of their principal upon this note, without the assent of the company or a majority of its directors to the transaction. This, it was incumbent on the plaintiff to show. Here two questions arise;—first,

whether the directors had the power to authorize the giving of the note, for if they had not, then their assent or ratification would be inoperative; secondly, whether a majority of the directors did assent to or ratify the act.

It is true the company received an extension of their loans at the bank in consideration of the assumption by them of the Fenton debt. This is a sufficient consideration, technically, to sustain the note if the act was within the scope of the powers of the directors, but it does not follow that, because there was a consideration for the note, the directors had power to execute it. It must also appear that it was a transaction within the scope of the powers of the directors who are but agents of the corporation. The directors had no such power unless under the circumstances there was an urgent necessity of doing it in order to save the credit of the company and enable them to go along with their business. If there was such necessity, making it for the interest of the company to enter into such arrangement, it was within the scope of their powers as directors, otherwise not. But as some of the directors were individually liable on the Fenton debt, for which the note in question was given, and their assent is relied on to make a majority, the note is not binding unless the transaction was in good faith towards the company, since some of the directors had an interest in casting their personal liability on the company and this was known to the bank at the time of the transaction. The question whether there was such an urgent necessity as to authorize the directors to make or sanction the arrangement, and whether they acted in good faith, are questions which should have been left to the jury under appropriate instructions. The court therefore erred in directing a verdict for the plaintiff. The question whether a majority of the directors did assent to, adopt or ratify the transaction, should also have been left to the jury under proper instructions. The evidence relied on by the plaintiff's counsel on this point is not of such an unequivocal character as to amount necessarily in law to a ratification or adoption of the act by a majority of the directors, even if the court could assume it all to be true, as it consists to some considerable extent in inferences and presumptions to be drawn from the facts testified to by the witnesses.

Stark Bank *v.* U. S. Pottery Co.

It is claimed among other things by the plaintiff's counsel, that the transfer of the stock by Fenton to the company and its acceptance by them is in law a purchase of the stock in consideration of the assumption of this debt. If it clearly appeared that such was the contract it might give validity to the note, but the evidence fails to show this. The note executed for the Fenton debt and for which the note in question is a renewal, was executed on the 14th of November 1857, and the stock was not transferred till November 23d, 1857, and then without any communication with the directors of the company, and, for aught that appears, without the knowledge of any of them except Rhodes, the clerk, who it seems was a director, and without any special reference to this debt, but to secure Fenton's general indebtedness to the company, he then owing them six or seven thousand dollars independent of this debt, and this debt, it appears, was never charged by the company to Fenton—at least the evidence tends to show this. It is therefore quite clear that this cannot be as matter of law a ratification of this transaction; —it is at most but evidence to be submitted to the jury with the other evidence in the case on this point.

It is claimed by the defendant's counsel that the county court erred in not instructing the jury that the note was void for usury under the laws of New York where the note is made payable. The only evidence before the county court as to the laws of New York, was that of Mr. Harmon on cross-examination, who said : he supposed that by the laws of New York the security for debt is avoided for usury. There was no proof of the provisions of the statute of New York, or what constitutes usury by the laws of that state. We are referred in argument to the statute of New York, but the question for this court to decide is whether the county court erred, which must be determined by reference to the evidence on which that court was called upon to act. We see no error in the refusal of the county court to charge as requested on this point. What the ruling should be with the statute of New York properly before the court upon the evidence, must be left for a future trial if the counsel choose to raise the question.

Judgment reversed and new trial granted.