Boynton, J.
The question presented by the record arises upon the exception to the charge of the court upon the-point of the defendant’s right to avoid the contract upon; *460 which the action, was founded. The rule that an agent or trustee in matters touching his agency, or pertaining to the trust, can not bind the principal or cesíui que trust, without his consent, by a contract in which the former is adversely 'interested, rests upon a very satisfactory foundation, and is supported by a great weight of authority. Wade v Pettibone, 11 Ohio, 57; Morison v. Thompson, L. R. 9 Q. B. 480 ; 1 Leading Cases in Eq. 210.
In Story on Agency, § 210, the rule is said to be founded “upon the plain and obvious consideration, that the principal bargains, in the employment, for the exercise of the •disinterested skill, diligence, and zeal of the agent for his own exclusive benefit. It is a confidence necessarily reposed in the agent, that he will act with a sole regard to the interest of his principal as far as he lawfully may.” And, in 2 Kent’s Com. 618, the same principle is asserted, in the following language : “ An agent, acting as such, can not take upon himself, at the same time, an incompatible •duty. He can not have an adverse interest or employment. He can not be both buyer and seller; for this would expose his fiduciary trust to abuse and fraud.” In Bennett, ex parte, 10 Yes. 393, Lord Eldon, commenting on .a sale of the trust property to the trustee, stated the reason of the rule denying the right of the trustee to buy the trust property to be, “that it would not be safe, with reference to the administration of justice in the general affairs of the trust, that a trustee should be permitted to purchase; for human infirmity will, in very few instances, permit a man to exert against himself that providence which a vendor •ought to exert, in order to sell to the best advantage, and which a purchaser is at liberty to exert for himself, in order to purchase at the lowest price.” The rule which prevents the agent or trustee from acting for himself in a matter where his interest would conflict with his duty, also prevents him from acting for another whose interest is adverse to that of the principal; and, in all eases where, without the assent of the principal, the agent has assumed to act in such double capacity, the principal may avoid the trans *461 action, at his election. No question of its fairness or unfairness can he raised. The law holds it constructively fraudulent, and voidable at the election of the principal.. Aberdeen Ry. Co. v. Blackie, 1 McQueen H. L. Cas. 461; The York Buildings Co. v. Mackenzie, 3 Paton H. L. 378; Bisham’s Principles of Eq. 106. 18 Ohio St. 182.
But does the present case fall within the operation of this principle. The right to avoid the contract, because the-agent has a personal interest in its subject-matter adverse to-that of the principal, or has assumed an incompatible duty, is one arising in equity for the principal’s protection. He-may avail himself of the right to avoid the contract., or he-may waive it, at his option.
That the agent may represent two persons, with their assent, in a transaction relating to or embracing a subject-matter respecting which their interests may be adverse or conflicting, admits of no doubt. In The Adams Mining Co. v. Senter, 26 Mich. 73, upon the question how far the double-agency of one affected his relation to his employers or third, persons, it was held, that “ where the same person is made the agent of two mining corporations, in the same-vicinity, and it becomes necessary for one to deal with the other, he must be presumed to have the same power to act for both that would be possessed if there were two agents-acting separately, and may dispose of property in the same way; and such double authority would dispense with such formalities as could not be complied with, where one man acts for both companies.” The court, in announcing its-opinion, say: “ The authority of agents, where no law is-violated, is as large as their employers choose to make it. There are multitudes of cases where the same person acts-under power from different principals in their mutual transactions. Every partnership involves such double relation. Every survey of boundaries by a surveyor jointly agreed upon would come within similar difficulties. There can be no presumption that the agent of two parties will deal unfairly with either.” So, where subsequent assent is given to the acts of the agent, the same result fol *462 ■lows; that is, if the principal, with full knowledge of all the facts affecting his rights, ratifies the act of the agent, the right to avoid the contract or transaction is gone.
In discussing the subject of the principal’s right to .avoid or rescind the contract, where the engagements of the agent are affected with a personal interest, Story, in his ■Commentary on the Law of Agency, § 810, further says: ■“Of course it is to be understood, as a proper qualification of the doctrine, that the principal has an election ■ to adopt the act of the agent or not; and that, if after .a full knowledge of all the circumstances, he deliberately .and freely ratifies the act of the agent, or acquiesces in it for a great length of time, it will become obligatory upon «him, not by its own inherent force, but from the considera••■tion that he thereby waives the protection intended by the law for his own interests, and deals with his agent, quoad ..hoc, discharged of his agency.”
Mr. Wharton, in his work on Agency, § 244, says: “ So, .also, a principal, when fully knowing the facts, can ratify the agent’s action, though tainted with employment by an ■ opposing party.”
The doctrine is equally well settled that the option to .avoid the contract must be exercised by the principal within' a reasonable time after being fully apprised of the circumstances of the agent’s engagement.
“ Where the principal is informed of what has been done, ■-he must dissent, and give notice of it within a reasonable time; and if he does not, his assent and ratification will be presumed.” 2 Kent’s Com. 616 ; Raley on Agency, 172.
What constitutes a reasonable time must largely, if not wholly, depend on the circumstances of the particular case. Where the consequences of delay are or may prove injurious to the other contracting party, especially where large •expenditures, to the knowledge of the principal, are being made, on the faith of the validity of the contract, the law requires prompt action on his part, if he would avoid responsibility for the acts of the agent. His right to avoid «•being one arising in equity, is governed by the rules upon *463 •which that court administers justice. ITe must speak when 'he should, or he will not be permitted, to speak when he •would. In Smith v. Clay, 3 Bro. C. C. 639 (n.), Lord Camden, adverting to the principles which govern a court of equity, where a party has slept upon his rights, said: “A ■court of equity has always refused its aid to stale demands, where a party has slept on his right, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced.”
This doctrine is universally recognized by courts of ■equity. Sanderson v. Etna Iron and Nail Co., ante 442; Twin Lick Oil Co. v. Marbury, 91 U. S. 587; Grymes v. Sanders, 93 U. S. 55; Brown v. County of Buena Vista, 95 U. S. 157 ; Clegg v. Edmondson, 8 De Gex, M. & G. 787; Jennings v. Broughton, 5 De Gex, M. & G. 126; Murray v. Graham, 6 Paige Ch. 622; 2 Story’s Eq. Jur. § 1520a.
Hence, where the principal has an option to avoid or stand by the contract of his agent, he is not permitted to await the issue of events to transpire in the future with the purpose of adopting the contract if the transaction to which it relates proves a paying one, and if not to reject it. Mere silence has often been held to give rise to a conclusive presumption of ratification, especially where good faith and fair dealing require the principal to speak, and his silence has a tendency to mislead. Story’s Agency, § 255.
It is equally true, and results from the application of the .■same principle, that if the principal adopts a part of the act of the agent, upon full knowledge of the circumstances, he thereby ratifies the -whole. He can not elect to take a part and reject the balance. An acceptance of the benefits of the transaction imposes the obligation to assume its burdens and operates to confirm it as a whole. And a ratifi■eation once made becomes as irrevocable, obligatory, and binding as if the act of the agent were previously authorized.
*464 In the-light of these principles let ns examine the question arising upon the charge of the court below.
If the contract sued on was void, because agents in common of the two corporations participated in making-it, it of course would follow that no prejudice resulted from the instructions given. But a contract between two corporations having common directors, made by their respective boards, or between a corporation and an individual director or a firm of which he is a member, is, at common-law, perfectly valid. In view of this fact, and to guard-against the evils which, in particular instances, might result therefrom, it was provided in England by 8 & 9 Yict. ch. 16, that “ no person holding an office or place of’ trust or profit under the company, or interested in any contract with the company, shall be capable of being a director ; and no director . . . shall be capable of being interested in any contract with the company, during the time he ■ shall be a director;” and also, that “if any director at any time subsequently to his election, ... be either directly or indirectly concerned in any contract with the company, or participate in any manner in the profits of any work to-be'done for the company, the office of such director shall . become vacant, and thenceforth he shall cease from voting or-acting as a director.” In Foster v. The Oxford W. & W. Ry. Co., 13 C. B. 200, it was held, that while these provisions incapacitated a party contracting with a company from -becoming or continuing a director, they did not avoid-the contract. The action was brought upon an agreement between the defendant and a firm of which a director of the defendant was a member, to recover for a supply of iron-to the company by the firm. In disposing of the point-taken that the contract was void under the foregoing provisions of the statute, Jervis, C. J., said: “ If all such contracts are void, contracts entered into with a joint-stock company, as well as contracts entered into with individuals, would-be avoided, if a member of the joint-stock company happened to be a director of the company contracted with; and yet the 87th section merely provides, that ‘ no person being; *465 a shareholder or member of any incorporated joint-stock company, shall be disqualified or prevented from acting as-a director, by reason of any contract entered into between such joint-stock company and the company incorporated by the special act; but no such director being a shareholder or member of such joint-stock company, shall vote on any question as to any contract with such joint-stock company/' That provision would have been unnecessary if the contract was already avoided.”
To the same effect is Ernest v. Nichols, 6 H. L. Cas. 401, There the 29th section of the 7 and 8 Vict., ch. 110, was-construed to render a contract void for noncompliance with its provisions. That section in terms prohibited a director from voting on the subject of any contract in which he was-interested. Then followed the provision that if any contract or dealing, with certain named exceptions, “shall be entered into, in which any director shall be interested, then the terms of such contract or dealing shall be submitted to the next general or special meeting of the shareholders, to-be summoned for that purpose, and no such contract shall have force until approved and confirmed by the majority of votes of the shareholders present at such meeting.” See also Murray’s Ex’r’s Case, 5 De Gex. M. & G. 746.
These citations sufficiently show that, in England, a contract between a corporation and one of its directors would, in the absehee of a statute affecting its validity, be upheld and enforced in her common-law7 tribunals. That the same rule prevails in this country is well established. See Ashurst’s Appeal, 60 Penn. St. 290 ; Stark Bank v. U. S. Pottery Co., 34 Vt. 144.
If it be granted that the confirmation of the contract by the defendant’s board of directors at the meeting of August 2, 1872, was voidable in equity, at the election of the company, for want of the presence at that meeting of • th.e board of a quorum of directors who were not directors of the plaintiff, it nevertheless appears that the board was composed of thirteen persons, a clear majority of whom. *466 were affected with no incapacity to act for the best interests of the company, and who sustained no fiduciary relation to the plaintiff whatever. This majority possessed ample power to restrain and control the action of the minority, and if the contract was voidable at the option of the company, it had full power to express the company’s election if it saw fit to avoid the contract. The fact that some of the persons composing this majority might vote with those who were members of both boards, and thereby create a majority in favor of the contract, would in no wise affect the validity of the transaction, nor relieve the board from the duty to move in the matter, if they desired the company’s escape from liability.
We have not, upon the most diligent research, been able to find a case holding a contract made between two corporations by their respective boards of directors invalid, or voidable at the election of one of the parties thereto, from the mere circumstance that a minority of its board of directors are also directors of the other company. Nor do we think such a rule ought to be adopted. There is no just reason, where a quorum of directors, sustaining no relation of trust or duty to the other corporation, are present, participating in the action of the board, cvhy such action should not be binding upon the company, in the absence of such fraud as would lead a court of equity to undo or set aside the transaction. If the mere fact that a minority of one board are members of the other, gives the company an option to avoid the contract without respect to its fairness, the same result would follow where such minority consisted of but one person, and notwithstanding the board might consist of twenty or more. In our judgment, where a majority of the board are not adversely interested, and have no adverse employment, the right to avoid the contract or transaction does not exist without proof of fraud or unfairness ; and hence the fact that five of the defend ant’s board of directors were members of the plaintiff’s board, whatever may have been its effect on the defendant’s right to disaffirm or repudiate the contract, if exercised *467 within a reasonable time, did not disable the defendant from ■subsequently affirming the contract, if satisfied with its terms, or rejecting it if not* nor did it relieve it from the duty to exercise its election to avoid or rescind within a reasonable time, if not willing to abide.by its terms.
That it did not do this, nor take any steps toward its ■disaffirmance, but continued to act under it for nearly two years and a half, receiving the rolling stock for the use of which it stipulated, and with which it operated its road for the whole of said period, making payments for such use in accordance with the rate fixed by the contract, very clearly appears from the admitted facts. Besides this, the petition avers that, upon an account stated of the amount due under the contract, on February 28, 1874, over eighteen months after the contract was entered into, and after ample time to elect to avoid if the company desired so to do, the defendant promised to pay the same, being in amount upwards of $300,000. This allegation the answer nowhere denies ; nor does it deny the allegation of the petition that said rolling stock was furnished and received and used under .such contract for the whole of said period of time.
The denial that the contract set up in the petition “ is or ■should be in any manner binding upon the company,” and the allegation that the defendant is “ not liable, except for the fair and reasonable value of the use of said rolling stock,” are but the averment of mere legal conclusions, entirely out of place in a pleading, and of no possible benefit to the pleader. This court has repeatedly held that both allegations and denials of this character are without any legal significance whatever. Knox County Bank v. Loyd’s Adm’r, 18 Ohio St. 353 ; Larimore v. Wells, 29 Ohio St. 13 ; B. & O. R. R. Co. v. Wilson, 31 Ohio St. 555. Hence the conceded facts clearly establish a ratification of the contract, and estop the defendant from denying its validity.
The instruction given by the court to the jury, as applied to the undisputed facts, was therefore erroneous. The jury were told that the fact that the said five directors of the plaintiff were five of the thirteen directors of the defend *468 ant, with the further fact that two of said five were two of the quorum of eight directors of defendant, who confirmed the contract upon August 2, 1872, rendered such contract in law invalid and voidable, at the election of the defendant, irrespective of the motives of the directors participating. This was intended and understood to mean that such election could then be made, notwithstanding the admitted facts, constituting in law a complete affirmance of the contract.
Whatever may have been the right to avoid the contract, without proof of fraud or unfairness, if exercised at an earlier day, it did not exist at the time of the trial. The question involving the right was therefore wholly removed from the ease.
The instruction permitted the jury to give the defendant the benefit of an option which, if formerly existing, had long since been lost by failure to exercise it.
Judgment reversed, and cause remanded for a new trial.