Vickery, J.
This action comes into this court on appeal from the court of common pleas of Summit county, and was heard below and here practically upon an agreed statement of facts, although an examination of the pleadings will disclose that *56 all the facts admitted in the agreed statement of facts, or proved by the evidence, were set forth in the petition and admitted in the answer, so the question resolves itself practically into a question of law.
The action was brought by Walter F. Kirn and John H. Shuman, as plaintiffs, against The Kraus Plumbing & Heating Company, Elmer D. Ruch, John V. Kraus and Fred W. Koch, to enjoin the corporation, The Kraus Plumbing & Heating Company, from paying, and the other defendants from receiving, certain amounts of money which had been voted to them as officers and employes of the said Kraus Plumbing & Heating Co.
It seems that The Kraus Plumbing & Heating Company is a corporation incorporated under the laws of the state of Ohio, with a capital stock of 250 shares, the par value of which is not disclosed in the record, but being presumably $100 per share, of which stock the plaintiffs own 90 shares, the rest being owned by the defendants, the principal stockholder being John V. Kraus, who holds something like 140 shares, the rest being divided among the other three defendants.
It appears from the record that the two plaintiffs, together with the three defendants, constituted the board of directors of the Kraus company, and that on or about the 7th day of April, 1917, at a regular meeting of the board of directors of the Kraus company, the defendants were elected, respectively, Ruch, as president, Koch, as vice president, and John V. Kraus, as general manager, and their salaries fixed as follows:
*57 President Ruch, $70 per week;
Vice President Koch, $70 per week;
General Manager John V. Kraus, $200 per week.
It also appears from the record, and is admitted in the pleadings, that the resolution providing for the salaries of the three officers herein referred to, together with salaries for other employes, was contained in a blanket resolution, that the resolution was introduced by one of the three defendants, that the resolution was carried by the votes of the three defendants, and that the two plaintiffs voted against said resolution; and upon the fact that the three defendants, who were interested parties, voted for their own salaries is based the contention of the plaintiffs, upon which they ask for an injunction, claiming that such contract, so-called, thus made, was absolutely void, and the suit is predicated upon that fact alone, for there is no allegation in the petition that these salaries thus fixed were unfair or unreasonable, nor that the business would not warrant such salaries, but it is simply urged that the parties interested, having no right to vote for their own salaries, the whole transaction is void and would warrant the intervention of a court of equity to prevent the payment of the money.
We have examined the cases cited in the briefs with much care, for apparently this exact question is a new question in Ohio and has never been directly decided. An abundance of authority is quoted outside of Ohio, some of which is based on statute and some not, which would seem to hold that such actions of boards of directors in making contracts in which the members of the board were *58 directly interested were void, but we do not think that to be the rule in Ohio. There is no statute in Ohio against boards of directors, or members of boards of directors, voting upon contracts in which they are personally interested, but it all resolves itself down to the question of good faith, and whether or not the stockholders of the corporation have been treated fairly or unfairly, and, as there is no allegation in the petition that these were unfair contracts, the question is made much easier.
Perhaps if the record would show that the contracts were unfair contracts and that the salaries were not warranted by the financial condition of the corporation, it would be the duty of a court of equity to scrutinize closely the acts of the directors in thus contracting with themselves, even though no such allegation was made, but from the facts in this case it appears that this corporation was very prosperous, for at the same meeting, or one closely connected therewith, a dividend of forty per cent, was declared upon the outstanding capital stock, payable at once, and indeed the record shows an amendment to the motion to pay forty per cent, dividend was proposed by one of the plaintiffs to the effect that one hundred and forty per cent, dividend be paid, which motion was seconded by the other plaintiff. This would seem to indicate that the corporation was unusually prosperous, for they surely would not have sought to pay a dividend unless it had been earned, and assuming, then, that this corporation had earned a dividend of one hundred and forty per cent., one can not see why a salary for the general manager of two hundred dollars a week would be exorbi *59 tant, or why the other officers helping to manage such a successful business should not be entitled to at least seventy dollars a week under conditions as they existed in 1917 and subsequently. Indeed, the record discloses that the two plaintiffs were desirous of distributing a larger share of the corporation assets even than this, for the record shows that one of them moved that it was unnecessary to have so many assets, and sought to have a part distributed, and that the other seconded the motion for such distribution of some of the property and a division of the proceeds amongst the stockholders pro rata in proportion to the amount of stock held by each. We refer to these things to show that the corporation ' was in such financial condition that good salaries would be warranted, as bearing upon the question of the good faith of the directors in voting salaries to themselves.
In The U. S. Rolling Stock Co. v. Atlantic & Great Western Rd. Co., 34 Ohio St., 450, Judge Boynton, in speaking for the court, after reviewing a great many authorities, comes to this conclusion, and, referring to the citations above, says at page 465:
“These citations sufficiently show that, in England, a contract between a corporation and one of its directors would, in the absence of a statute affecting its validity, be upheld and enforced in her common-law tribunals. That the same rule prevails in this country is well established.”
He cites Ashurst’s Appeal, 60 Pa. St. 290, and Stark Bank v. U. S. Pottery Co., 34 Vt., 144.
The by-laws of the corporation under discussion here provide:
*60 “Article 2, Section 1. Directors. The board of directors shall consist of five stockholders to be elected by ballot, to hold office for the term of one year and until their successors are elected and qualified.
“Article 2, Section 3. The board of directors shall meet for the election of officers and the transaction of business without unnecessary delay after each annual meeting of the stockholders, and without notice, provided a quorum of the board is present. Three members of the board of directors shall constitute a quorum.
“Article 3, Section 1. Election of Officers. The officers of this company shall be a president, general manager, vice president, secretary and treasurer, and they shall be paid such compensation as thé board of directors determine. Such officers shall be elected for one year or until their successors are elected and qualified.”
It will be noted that here, by special authority of the stockholders, the directors have been delegated the authority and power to fix the salaries of the officers for the ensuing year. Indeed, the record discloses that all the stock was represented by the directors. Without such delegated authority, undoubtedly, under the law of the state of Ohio, the directors would still have it. Now, it will be noticed that there are but five directors, three of whom are the officers whose salaries were fixed by the directors, and, necessarily, the officers would have to vote upon their associates’ salaries, if not their own, and, as this board of directors was then constituted, if a director were prevented from voting upon his own salary he might still vote for his *61 associates’ salaries, and there would be a tie vote between the two remaining directors and the two plaintiffs, who seem to represent the minority stockholders, which would result in a deadlock if ■they voted as the record indicates they would vote under such circumstances, and thus no salaries could be fixed, which in turn would result in the taking of the corporation out of the hands of those whose money was invested in the corporation and putting it in the hands of strangers. I do not think this is a thing that is desired by our laws, for we have always supposed that the majority of the stock of a corporation controls and manages the corporation and may manage it over the protests of the minority, and the courts will not interfere unless there is clearly a wrong or fraud being perpetrated upon minority stockholders.
In Yeiser, Admr., et al. v. The U. S. Board & Paper Co., 7 C. C., N. S., 15, where the directors had acted unfairly and had committed a fraud on the members of the corporation, the circuit court of the first circuit first quotes from U. S. Board & Paper Co. v. Browne et al., 1 C. C., N. S., 345, to the effect that a contract made by the directors of a corporation with themselves was not void where there was no allegation that it was an unfair contract, and then sets aside the contract in the case under consideration.
We have gone through the authorities cited with much care, and we have come to the conclusion that where there is no allegation of fraud alleged in the pleadings, and no evidence to show fraud or unfáír dealings, but the contract under all the circumstances is fair, just and right, such contract *62 will not be set aside, and that an injunction at the suit of some of the directors representing a small proportion of the capital stock of the corporation, who seem to be antagonistic to the management of the corporation, will not be allowed to prevent its being carried out.
It will be noted again that all the contracts alluded to in the cases referred to are contracts where members of boards of directors have made contracts with themselves not in the way of salaries but in the way of deálings with the corporation from the outside, and the courts in Ohio have uniformly held that in the absence of bad faith even such contracts are sustainable. It would very much more truly follow that such contracts, if salaries of officers, if fair and reasonable, should be sustained.
We are therefore- of the opinion that the plaintiffs are not entitled to the relief prayed for in their petition, and an injunction will be refused and the petition dismissed.
It will be noted that the view we have taken of the right to maintain this action will obviate the necessity of considering the other question involved —that of granting the relief prayed for after the fault complained of has been remedied by the subsequent act of the corporation, to-wit, that of increasing the number of directors voting on their own salaries. The preliminary injunction granted by the court of common pleas in the first instance having on motion been dissolved by that court, no injunction having, been since issued, and the money having been drawn by the directors, the view we have taken of the right of the plaintiffs to maintain *63 their action obviates the necessity for decision of what for above reasons is claimed to be a moot question.

Petition dismissed.

Dunlap, P. J., and Washburn, J., concur.