**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**JOHN LANGENBACHER CO., Inc., Respondent.**

**No. 192, Docket 31455.**

United States Court of Appeals Second Circuit.

Argued Dec. 5, 1967.

Decided July 17, 1968.

Richard S. Rodin, Atty., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael N. Sohn, Atty., N.L.R.B., for petitioner.

Irving T. Bush, Miller & Bush, New York City, for respondent.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge:

The National Labor Relations Board, having decided that respondent had violated Section 8(a) (1) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 158(a) (1), has petitioned this court, pursuant to 29 U.S.C. § 160(e), for enforcement of its order requiring respondent to cease and desist from committing an unfair labor practice, to offer immediate and full reinstatement to three of respondent's employees, Blum, LiCausi, and Infranca, to reimburse these employees for whatever loss they may have suffered because of the violation, and to post appropriate notices. The Board's Decision and Order, consisting of an adoption of the findings, conclusions and recommended order of the Trial Examiner, is reported at 161 N.L.R.B. 258 (1966). Because we find this decision and order to be supported by substantial evidence, we grant the petition for enforcement.

The important facts found by the Trial Examiner may be stated briefly. Respondent's business involves the building and installing of wood interiors of banks, hotels, and similar businesses; among its employees is a group of men working as "hardwood finishers" who are represented by District Council No. 9, Brotherhood of Painters, Decorators, and Paperhangers of America (the "Union"). On June 19, 1965, respondent, through its foreman, Comi, called to-

gether the hardwood finishers and asked them to work a "split shift"; half of the crew would work from 8:00 A.M. to 4:30 P.M., the usual hours of work for these employees, and the other half would work from 12:30 P.M. to 9:00 P.M. This request was occasioned by respondent's need to use its finishing room for storage, which made it difficult for a full shift of finishers to work efficiently there. Respondent feared it might not meet its contractual commitments and planned to alleviate the congestion by having fewer men than usual working at any one time. Under this split-shift proposal the pay of all the finishers would continue to be at the straight-time rate. The men, especially Blum, felt that those who worked the late shift might be entitled to a rate of pay greater than straight-time and felt that the Union ought first to be consulted. Comi told them to discuss the matter with the company president, Tolksdorf. Thereupon a group of the finishers, including Blum, Infranca and LiCausi, had a brief unpleasant meeting with Tolksdorf during which they refused to work a split shift this time because Tolksdorf was unwilling to promise that they would not have to work a split shift at straight time again in the future. As the meeting broke up, Tolksdorf, cursing, stated, "You ———— me this time, I'll ———— you the next time." Shortly thereafter, on July 2 or 3, 1965, Comi laid off Blum. When Blum called a week later to see if work had become available, Comi stated: "I told you Carl, if you are ever to get further involved in union affairs and those people upstairs hear about it, they will drop you immediately." Despite this statement, Blum returned to work. Again, about August 12, 1965, Comi, for economic reasons, laid off six employees, including Blum, LiCausi, and Infranca. The three other employees then laid off each had less seniority with respondent than the three named, but were recalled to work by Comi soon after the six-man layoff, while Blum, LiCausi, and Infranca were never recalled. However, during the layoff, Comi received a call from the finishing foreman at another company, William Somerville, Inc., in the course of which Comi was requested to refer some good finishers to him. Comi suggested Blum, Infranca and LiCausi, but did not mention the other three men who had been laid off at the same time. The Somerville foreman indicated astonishment that these three men were available and Comi said he would "discuss this with you later." On August 18, 1965, Blum, Infranca and LiCausi met by prearrangement with Comi at a luncheonette and Comi told them of the Somerville jobs. He further told them that the decision to lay them off at Langenbacher was not his decision and that he was merely following orders. He told Blum that he had warned him before about union activities, and, as to the other two, he said he was surprised that they had become involved in "union affairs," and that if they "kept their noses clean" and apologized to Tolksdorf they might be rehired in a few months. In response to Blum's inquiry whether this meant the layoff was permanent, Comi replied that they would have to "read between the lines"; and if they came back "looking for work and saw new faces with work available," but Comi would not rehire them, they would know the answer. Subsequent to the August 18, 1965 meeting these three men informed respondent on several occasions of their desire to return to work but were told that there was no work for them. As well as recalling the other three laid-off employees, the respondent also hired new employees after these requests were made. Respondent explained this fact by stating that the particular skills possessed by Blum, Infranca and LiCausi had not been needed.

The Trial Examiner (and the Board) concluded on the basis of the foregoing facts that: Tolksdorf's promise of future action against the employees for refusing to work the split shift was a threat of reprisal violating 29 U.S.C. § 158(a) (1); that Comi's warning to Blum in mid-July 1965 violated 29 U.S.C. § 158(a) (1); and that respondent's refusal to recall

Blum, Infranca and LiCausi was in reprisal for their engaging in protected activities and hence in violation of 29 U.S.C. § 158(a) (1).

■ The respondent makes the usual attack upon the Trial Examiner's (and the Board's) credibility determinations. As is quite often the case, the Trial Examiner was confronted with contradictory testimony. The employees testified that management (Tolksdorf and Comi) made certain statements; management either denied having made these statements at all or claimed to have made substantially different ones. In each instance where a credibility determination was made the Trial Examiner supported his conclusion with sound reasons culled either from analysis of circumstantial factors concerning which there had been unanimity of testimony, or from documentary evidence such as employee work records. That the Examiner always credited the employee version does not detract from the plausibility of each determination where, as here, good reasons are given for adopting that version. We do not believe that the Board's approval of the Examiner's evaluation of certain testimony as reliable and other testimony as not reliable is on its face "hopelessly incredible," N.L.R.B. v. Marcus Trucking Co., 286 F.2d 583, 589 (2 Cir. 1961); N.L.R.B. v. Dinion Coil Co., 201 F.2d 484, 490 (2 Cir. 1952), and we accept this evaluation.

■ Respondent also contends that when Blum, LiCausi, and Infranca balked at working a split shift at straight time rates they were not engaging in concerted activity protected under 29 U.S.C. § 157, and therefore Tolksdorf's comment made as the men left the meeting of June 19, 1965 cannot be a violation of 29 U.S.C. § 158(a) (1). This contention is based upon respondent's view that under its agreement with the Union it was not obligated to provide a premium rate of pay for finishers working a split shift.

Indeed, it is unclear whether respondent was contractually bound to provide such a premium rate for split shift work,[1] but, nevertheless, we must disagree with re-

---

1. Since 1935 Langenbacher has maintained amicable contractual relations with the Union as representative of its hardwood finishers. Until July 31, 1964, Langenbacher executed individual collective bargaining agreements with the Union, adopting the so-called "Trade Agreement," the contract between the Union and the painting industry. On July 1, 1964 respondent joined the Manufacturing Woodworkers Association of Greater New York, Inc., and, effective August 1, 1964, began to apply the terms of the collective bargaining agreement of that Association. In June or July 1965, several hardwood finishers from the New York area, including Blum, Infranca and LiCausi from the Langenbacher shop, sought permission from the district court to sue the officers of the Union for breach of their fiduciary duties as union officers. This petition followed several incidents in which employers did not comply with the terms of the collective bargaining agreement and the Union did not act diligently enough or forcefully enough, in the eyes of these men, to protect the employees' interests. Part of the charge leveled against the union officials was that the Association agreement was a "sweet-

heart" agreement. Thus one of the questions to be determined by the District Court for the Southern District of New York in the aforementioned suit, now pending, is whether the Association agreement should be applied, *inter alia*, to the men in the Langenbacher shop, or whether that agreement has no vitality and the terms of the older Trade Agreement were applicable during the period of time involved here.

It appears that, under Article III of the earlier Trade Agreement, "regular time" for hardwood finishers was to be from 8:00 A.M. to 12:00 noon and from 12:30 P.M. to 3:30 P.M., Monday through Friday. Any work done outside "regular time" had to be compensated at greater than straight-time rates. Thus under the Trade Agreement the finishers clearly were entitled to a premium rate of pay if they worked on a split shift after 3:30 P.M. However, the right to a premium rate of pay for split-shift work under the Association Agreement is less clear. That agreement provides, in pertinent part:

SECTION 6. The work week shall consist of forty (40) hours per weel [sic] divided into five (5) work days

spondent's analysis of the situation. Even assuming, which we do not, that a union's asking for benefits plainly not accorded by the collective bargaining agreement would necessarily constitute a defense to subsequent employer misconduct, we would hold that there is substantial evidence on the whole record to support the Trial Examiner's (and the Board's) conclusion. For we have recently said that an attempt by employees to enforce their understanding of the terms of a collective bargaining agreement is a protected activity under 29 U.S.C. § 157 if the employees have a reasonable basis for believing that their understanding of the terms was the understanding that had been agreed upon, N.L.R.B. v. Interboro Contractors, Inc., 388 F.2d 495, 500, and n. 7 (2 Cir. 1967). Here, the underlying question relative to the applicable agreement, see note 1, supra, is sufficient to supply a reasonable basis for the employees' belief.

■ Therefore, inasmuch as there is substantial evidence that the employees were engaging in protected activity at the June 19, 1965 meeting, and it being quite clear that Tolksdorf's parting shot was a threat of reprisal, we must uphold the Board's finding of a violation of 29 U.S.C. § 158(a) (1) as to that incident.

■ The arguments made by respondent regarding the other two findings of 29 U.S.C. § 158(a) (1) violations are even less meritorious. Both findings involve statements made by foreman Comi: the first statement was made to Blum alone upon his return to work after a layoff; the second to Blum, Infranca and LiCausi regarding their respective discharges. It is quite clear from the record that Comi had complete authority to determine when there were to be layoffs, who was to be laid off and who was to be recalled to work. Thus Comi was a "supervisor" under the Act, and any ad-

missions he might have made in carrying out these delegated duties were the respondent's admissions. See 29 U.S.C. § 152(2), (11), and, e. g., N.L.R.B. v. Syracuse Stamping Co., 208 F.2d 77, 79 (2 Cir. 1953). Comi knew of Blum's long record of union activity and of his involvement in the "split shift controversy." Comi's July 4 threat to Blum therefore could reasonably be found to constitute a violation by respondent of 29 U.S.C. § 158(a) (1). See N.L.R.B. v. Fitzgerald Mills Corp., 313 F.2d 260, 269 (2 Cir.), cert. denied, 375 U.S. 834, 84 S.Ct. 47, 11 L.Ed.2d 64 (1963). Moreover, Comi's remarks on August 18, 1965, upon the occasion of his luncheonette meeting with Blum, LiCausi, and Infranca are adequate to charge respondent with an illegal motivation for the discharges. N.L.R.B. v. Ferguson, 257 F.2d 88 (5 Cir. 1958). This is one of those rare cases in which there has been "an outright confession of unlawful discrimination." Id. at 92. If Comi were merely passing along news of the job opening at Somerville he could have done so without explaining to the three men why, in this situation, they should take other employment; however, part of Comi's job was to tell employees the when and why of discharges, and, as a permanent discharge was unusual in respondent's business, in this case he had to elaborate.

■ Finally, respondent argues that the Board has imposed a seniority system upon respondent where none is called for by respondent's agreement with the finishers. This imposition is supposedly suggested by the Board's reliance upon the fact that other employees with less job experience than Blum, LiCausi, and Infranca were recalled while these three men were not. However, this reference to seniority used by the Board to demonstrate the discrimination in the discharges is a minor, expendable part of the Board's analysis of all the facts in

from Monday to Friday inclusive. Eight (8) hours shall constitute the working day. Double time shall be paid for all work performed outside the

hours specified. Each employee shall have one hour for lunch, which may be reduced to one-half on mutual consent.

the case. The facts are that Blum, Infranca, and LiCausi were discharged on August 12, 1965 and not recalled, that all of the other employees who had been laid off, no matter what their seniority, were recalled, and that a discriminatory motive for these discharges can be found in Comi's remarks to the three men on August 18, 1965. This evidence, without any consideration of seniority, is sufficient to support a finding that the discharges were improperly motivated and were in violation of 29 U.S.C. § 158(a)(1). N.L.R.B. v. Ferguson, supra.

The petition for enforcement is granted.