**COMMUNITY HOSPITAL OF ROANOKE VALLEY, INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 75–1971.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1976.

Decided July 1, 1976.

Wilbur L. Hazlegrove, Roanoke, Va. (William D. Elliot, Hazlegrove, Dickinson, Smith & Rea, Roanoke, Va., on brief), for petitioner.

Gil A. Abramson, Atty., N.L.R.B., Washington, D.C. (Elliott Moore, Deputy Assoc. Gen. Counsel, and John S. Irving, Jr., Gen. Counsel, N.L.R.B., Washington, D.C., on brief), for respondent.

Before BRYAN, Senior Circuit Judge, and CRAVEN and RUSSELL, Circuit Judges.

CRAVEN, Circuit Judge:

Community Hospital[1] appeals the ruling of the National Labor Relations Board that it violated Section 8(a)(1) of the NLRA[2] by interfering with its employees' exercise of their Section 7 rights. The Board found that the Hospital violated the rights of Nurse Irene Weinman by issuing a warning notice to her on September 26, 1974, in connection with comments she made concerning the Hospital on a television interview program. Nurse Helen Fields' rights were found to be violated by the Hospital's removal of her name from an "on-call" list[3]

on October 10, 1974, and the refusal of the Hospital on November 29, 1974, to reemploy her on a full-time basis.

The Board[4] found that these actions were taken as to both women because of their "bringing to public attention their efforts to organize for the improvement of their wages and working conditions through collective bargaining, which management was attempting to channel and control." App. 25(a). It ordered that the warning notice issued to Weinman be rescinded and removed from hospital files. The Board further ordered that Fields' name be restored to the on-call list; that the Hospital offer her immediate full-time employment as a staff nurse or an equivalent position; and that it make-her whole for any loss of earnings suffered as a result of the Hospital's unlawful conduct.

On the Board's cross-application, we order enforcement.

## I.

On August 27, 1974, Helen Fields, who had resigned from full-time employment with the Hospital in September 1973, interviewed with Ms. Margaret Hanley, director of nursing services. She told Hanley she was interested in returning to full-time employment with the Hospital. Hanley expressed surprise in view of " 'the letter[5]

1. As of August 25, 1974, Community Hospital, a nonprofit institution, came under the jurisdiction of the Labor Board. Public Law 93–360 (1974).

2. 29 U.S.C. § 151, et seq.

3. The "on-call" list contains the names of nurses who form a group of "floating personnel," who "may request assignment to . . . available positions or be called upon to fill positions resulting from scheduling, sickness or absenteeism." Brief for Appellant at 7.

4. The Board adopted the Administrative Law Judge's opinion as its own. It affirmed "the rulings, findings, and conclusions of the Administrative Law Judge" and adopted "her recommended Order."

5. The letter in issue appeared in the Roanoke World-News on April 17, 1974. It is reproduced below.

Nursing dilemma

I RESENT your labeling the local nursing salary situation a pay gripe. It is a hard fact in every local nurse's life.

In 1953 I graduated from nursing school. I was dedicated, enthusiastic, concerned, and wanted to work with people. Eleven years of hospital nursing have taken their toll on me.

I find dedication will not feed my family; enthusiasm will not pay the house note. Concern will not build a bank account for old age nor help with my children's college education. Love will not provide me with a car, or gas to run it. Former patients will not provide my family's clothing.

I recently left hospital nursing for employment in a physician's office. The salary is good, the benefits are excellent. The duties are a challenge not a frustration. After a day's work I know I will not be asked to work eight hours more because of a help shortage, and I

[Fields] wrote to the newspaper and [her] unhappiness with hospital nursing.' " Since Fields had neither resigned from her employment with a private medical clinic nor given notice of her intent to resign, Hanley declined to discuss the matter further.

On the evening of August 27, between 40 and 50 of the Hospital's staff nurses held a meeting. Its purpose was to consider organizing a chapter of the Virginia Nurses Association to discuss salaries, benefits and grievances with the Hospital. Temporary officers were elected. Weinman was named chairman and Fields secretary.

On September 24, 1974, Weinman and Fields were interviewed by a reporter from a local television station as part of a news story concerning dissatisfaction among the Hospital's nurses and organizational activities there. During the interview, Weinman made the following statement:

> There are times, especially the 3:00 to 11:00, and the 11:00 to 7:00 shifts, when there are not rn's to cover the whole medical-surgical unit of 40 patients. And this isn't just particular at our hospital alone in the valley . . . that's a known fact. And, you know, we feel very badly about this, we feel it is directly related also to the salary and benefits situation we're having, like Helen was saying earlier. The cost of living, according to the National Chamber of Commerce figures, that have come out, are just as high here in the Roanoke area as they are anywhere in the country. And yet our salaries in this area are like 60 to 80 cents an hour lower than they are anywhere else in the country.

App. 39(a)–40(a).

On September 26, two days later, Hanley met with Weinman. Hanley stated that she "was appalled at what she had said on the television interview." Weinman re-

sponded that she had said nothing which was untrue. Hanley replied: *"That may be so;* but the impression that you created with the public was disastrous to the hospital as far as I was concerned." (Emphasis added.) Hanley then gave Weinman the following warning notice:

> Nature of Warning: Breach of hospital and professional ethics in broadcasting via the television news media her dissatisfaction with hospital working conditions regarding staffing and her demotion.
>
> .    .    .    .    .
>
> Remarks: Further incidents of this nature would be cause for dismissal.

App. 58(a).

Weinman protested the issuance of this notice.

On November 18, 1974, Fields had another interview with Hanley and asked to be transferred from the on-call list to a full-time staff nursing position. Hanley told her that she had been removed from the on-call list because she had not worked the required two weekend days per month. Fields protested that she had received no notice of that action, a fact that the Hospital does not dispute. Full-time employment was discussed further, and Fields' April 1974 letter to the newspaper was again mentioned by Hanley.

On November 29, 1974, Fields and Hanley met. Hanley told Fields that she would not be reemployed "because of her prospective dissatisfaction with employment at Community Hospital based on publicly announced dissatisfaction and frustration with working conditions at Community Hospital."[6]

## II.

█ It is for the Board to find facts and draw appropriate inferences. The Board found that:

> Won't you speak up before more nurses leave hospital nursing?
> HELEN FIELDS
> Roanoke

---

feel guilty when I say no. For the first time in nine years I have time to spend with my family.

Many more nurses in this area are leaving hospital nursing for the same reasons.

The public cannot afford to continue to sit idle or remain mute concerning such a sad situation as nursing finds itself in in our area.

6. Brief for Appellant at 13. The assigned reason is perhaps alone a sufficient basis for enforcement of the Board's order.

**610**

The evidence . . . clearly reveals that the [Hospital's] true motivation was to channel or control its employees' organizing efforts

.    .    .    .    .

It is also clear that the appearance of these two employee[s] [Weinman and Fields] . . . on the television news broadcast brought their cause to public attention and thereby triggered the [Hospital's] coercive conduct toward them. App. 24(a).

■ This finding is supported by substantial evidence, and is buttressed by the chronology of events. Shortly after Weinman and Fields [7] were publicly identified as leaders of employee organizational efforts in the Hospital, adverse actions were taken concerning them. And these actions were taken by individuals who had clearly demonstrated an antiorganizational animus. This circumstantial evidence, coupled with the Administrative Law Judge's credibility findings in favor of Weinman and Fields, requires that the determination of the Board be affirmed.

■ As to Weinman, the Hospital argues that, regardless of its motivation, the warning notice could not constitute an unfair labor practice since her disparaging and disloyal statements were unprotected under *NLRB v. International Brotherhood of Electrical Workers,* 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953). "Irene Weinman, either intentionally or negligently, disparaged and discredited the quality of nursing care available at the Hospital, to the point of insinuating that it was unsafe." Brief for Appellant at 33.    .

We conclude that Weinman's statements were not unprotected. As Hanley admitted, they were true, and unlike the statements found unprotected in *Electrical*

*Workers, supra,* they were directly related to protected concerted activities then in progress. *See NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 17, 82 S.Ct. 1099, 8 L.Ed.2d 298 (1962) (interpreting *Electrical Workers* ); *NLRB v. Cement Transport, Inc.,* 490 F.2d 1024, 1029-30 (6th Cir. 1974).

Having found the other assignments of error without merit, the Board's order will be

*ENFORCED.*

BRYAN, Senior Circuit Judge (dissenting):

A fair reading of the entire record in this case discloses for me a bald and stark want of substantial evidence underlying the Board's conclusion that the Hospital engaged in unfair labor practices.

Specifically, the Board says that the Hospital "interfered with, restrained, and coerced its employees [Nurses Weinman and Fields] in the exercise of the rights guaranteed in Section 7, and thereby violated Section 8(a)(1) of the National Labor Relations Act." [1] This legislation was made applicable to non-profit hospitals, such as the one here, on August 25, 1974, and the Board's imputation of violations begins with events occurring within two days of the law's efficacy.

Truth is, the "restraint" imposed by the Hospital consisted of its refusal to continue the employment of Fields because (1) of her disloyalty to the Hospital, while in its employ, in criticizing its services by letters to the newspapers, and in a joint television interview with Weinman, and (2) because in the next month thereafter she refused on three occasions to work when on on-call duty. The "restraint" placed upon Weinman was a "warning" arising from her part in the disloyal television interview.

> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; . . .."
>
> Section 7, 29 U.S.C. § 157: "Employees shall have the right to self-organization . . . to bargain collectively . . . and to engage in other concerted activities . . .."

---

7. We find it very significant that the ruling requiring on-call nurses to work two weekend days per month lay almost dormant until applied to Fields subsequent to her public appearance in the television interview.

1. Section 8(a)(1), 29 U.S.C. § 158(a)(1): "It shall be an unfair labor practice for an employer—

The tersely cogent observation of Mr. Justice Burton on disloyalty, or "biting the feeding hand", in *NLRB v. Local Union No. 1229, I.B.E.W.*, 346 U.S. 464, 74 S.Ct. 172, 98 L.Ed. 195 (1953) is a pithy and elegant disposal of this case:

"There is no more elemental cause for discharge of an employee than disloyalty to his employer." p. 472, 74 S.Ct. p. 176.

"The legal principle that . . . disloyalty is adequate cause for discharge is plain enough." p. 475, 74 S.Ct. p. 178.

Finally, refusal to work carries its own condemnation. The order of the Board should not be enforced.