ARO, INC., Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 77–1074.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 20, 1979.

Decided April 20, 1979.

William N. Ozier, Bass, Berry & Sims, Nashville, Tenn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Raymond A. Jacobson, Regional Director, N. L. R. B., Memphis, Tenn., for respondent.

Before CELEBREZZE and LIVELY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This case is before the court on a petition of ARO, Inc. (the Company) to review an order of the National Labor Relations Board (the Board) and the Board's cross-application for enforcement of its order.

The question before this court is whether there is substantial evidence to support the Board's decision that the Company violated § 8(a)(1) of the National Labor Relations Act, as amended (the Act), 29 U.S.C. § 158(a)(1), by electing not to re-employ Mrs. Mary Williams, a temporary employee who had been discharged. The Board concluded that she had not been re-employed because of her repeated complaints concerning her discharge. Upon a review of the record we conclude there is not substantial evidence that the Company violated the Act. Accordingly, we deny enforcement of the order of the Board.

I

Mary Marvleen Williams (Williams) was hired by the Company on January 15, 1975, as a temporary employee in the job classification of janitor-cleaner. Earlier that week the Company had hired David M. Tipps and Margaret N. Lawson as temporary employees in the janitor-cleaner classification. The day following Williams' employment the Company hired George Propst as a permanent employee in the janitor-cleaner classification. Williams was paid $4.26 per hour, in accordance with the wage scale provided in the collective bargaining agreement in effect between the Company and the Union.

On April 11, 1975, Williams, Tipps and Lawson were terminated[1] due to a "belt

---

1. The parties, Administrative Law Judge, and the Board used various terms, including "laid off," "terminated," and "separated" to describe the action of the Company on April 11, 1975. From our review of the record we conclude that the Company's action had the effect of terminating the three employees in question. Since Tipps, Lawson, and Williams had not attained seniority status, they had no contractual right to recall. Furthermore, it is clear

tightening" policy of the Company. As of the date of her discharge Williams had been employed less than three months and had not attained status as a permanent employee under the terms of the collective bargaining agreement. Furthermore, Williams had acquired no seniority nor did she have any right to be recalled in the event future janitor-cleaner positions became available.

Prior to her discharge, Williams learned that only the temporary janitor-cleaners were going to be terminated; Propst, who was hired as a permanent employee, was to continue in his position with the Company. Before the effective date of her termination, Williams approached her supervisors to inquire about the order of discharge of the janitor-cleaners. Williams complained that employee Propst should have been among those discharged since he was the least senior of the janitor-cleaners. The supervisors explained to Williams that since none of the janitor-cleaners had worked a sufficient time to gain seniority, it was the policy of the Company to discharge temporary employees before discharging probationary employees hired for permanent positions.[2]

Williams was dissatisfied with the explanations given by her supervisors. Shortly after her discharge, Williams contacted Robert Shanks, an employment administrator with the Company, to reiterate her complaint. Shanks gave Williams an explanation to the same effect as that which she already had received. Thereafter, Williams contacted Shanks almost every month seeking information about possible re-employment. Williams testified that during her conversations with Shanks he told her that if a position became available she would be considered for it. However, in October 1975 Williams was informed by Shanks that she would not be re-employed because of her complaints regarding the order of discharge.

Consequently, Williams filed the present unfair labor practice charge. In her charge she alleged that the Company had failed to "recall her from layoff status because she engaged in protected concerted activity [because she had complained]."

Following an investigation of Williams' unfair labor practice charge, the Acting Regional Director of the Twenty-Sixth Region issued a complaint and directed that a hearing be held before an Administrative Law Judge. In his decision of July 19, 1976, the Administrative Law Judge reviewed Williams' status under the collective bargaining agreement and discussed her acts and motivations in complaining. He specifically found that "Williams had no seniority status or rights under the contract and [determined] that her inquires or complaints were thus regarding rights that did not exist." The Administrative Law Judge concluded:

from the record that Lawson and Tipps were subsequently "re-hired" or "re-employed" rather than being "re-called from layoff status."

2. James Rutland, former Manager of ARO's Personnel Relations Branch, explained that as a matter of policy, and not seniority, temporary-probationary employees were terminated prior to permanent-probationary employees. Rutland testified:

A. Temporary employees are the first to go, if there are such, and then probationary employees, apprentices, trainees, et cetera go before any employee having seniority status is laid off.

Q. All right, sir. Mr. Rutland, assuming that there are ten employees in a classification, say, as janitor-cleaner, all of whom are probationary employees, all hired for permanent jobs, all still in their probationary period, but beginning at different dates, is there any order in which those probationary employees are laid off, if it's necessary to, say, lay off five of those ten employees?

In other words, do you start with the one who was hired last, or how do you decide which of those probationary people will be laid off?

A. No, if we were going to lay off five of ten probationary employees, then we would attempt to keep—I said we would attempt—we would keep the five best of the ten.

Q. Regardless of when they started to work?

A. Regardless of when they started work, and we would let the other five go.

Q. I see, but it's your testimony, then, that before you would begin laying off probationary employees, you would first lay off any temporary employees in that classification; is that right?

A. That is correct.

I find it impossible to stretch the facts of this case to meet the Board's judicial precedents defining and encompassing protected concerted activity. The actions of Williams in this case I thus find and conclude were not concerted activity and were purely personal.

The Administrative Law Judge recommended dismissal of the complaint.

Upon review, the Board disagreed with the conclusions of the Administrative Law Judge. The Board held that the merits of an employee's complaint are irrelevant to the issue of whether the employee is engaged in protected concerted activity. The Board concluded that Williams' complaints amounted to protected concerted activity under the Act and ordered her reinstated with back pay. The Board's decision is reported as *ARO, Inc.*, 227 N.L.R.B. 243 (1976). This petition and the Board's cross-application for enforcement followed.

II

Section 7 of the Act provides that "employees shall have the right . . . to engage in . . . *concerted* activities for the purpose of collective bargaining or other mutual aid or protection. . . ." (Emphasis added.) 29 U.S.C. § 157. Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of . . ." their § 7 rights. 29 U.S.C. § 158(a)(1).

The issue before the court is whether Williams' complaints about the order of discharge of the janitor-cleaners amount to "concerted activity" under the Act. The Board concluded that they did, relying primarily upon *Interboro Contractors, Inc.*, 157 N.L.R.B. 1295 (1966), enf'd, 388 F.2d 495 (2d Cir. 1967). *Interboro Contractors* held that complaints by an individual employee in an effort to enforce provisions of a collective bargaining agreement amounted to concerted activity under § 7 of the Act, even in the absence of interest by fellow employees in the complaints. 157 N.L.R.B. at 1301, 388 F.2d at 500. The rationale for this rule is that individual action seeking to implement the terms of a collective bargaining agreement is merely an extension of the concerted activity which gave rise to the agreement in the first place (constructive concerted activity). *C & I Air Conditioning, Inc.*, 193 N.L.R.B. 911 (1971), *enforcement denied*, 486 F.2d 977, 978–79 (9th Cir. 1973).

The Circuits are split over whether to apply *Interboro* as the test for concerted activity under § 7 of the Act. Two Circuits, the Second and Ninth, have given at least limited approval to the doctrine. *See Interboro Contractors, Inc.*, 388 F.2d 495, 500 (2d Cir. 1967) (activities involving attempts to enforce the provisions of a collective bargaining agreement may be deemed to be for concerted purposes even in the absence of such interest by fellow employees); *N. L. R. B. v. John Langenbacher Co.*, 398 F.2d 459, 463 (2d Cir. 1968), *cert. denied*, 393 U.S. 1049, 89 S.Ct. 685, 21 L.Ed.2d 691 (1969) (*Interboro* doctrine qualified to the extent that attempts by employees to enforce their understanding of a collective bargaining agreement is concerted activity only "if the employees have a reasonable basis for believing that their understanding of the terms was the understanding that had been agreed upon"); *C & I Air Conditioning*, 486 F.2d 977, 978 (9th Cir. 1973) (recognized "emergence of that rule" but found it unnecessary to follow). *See also Randolph Division, Ethan Allen, Inc. v. N. L. R. B.*, 513 F.2d 706 (1st Cir. 1975); *N. L. R. B. v. Ben Pekin Corp.*, 452 F.2d 205 (7th Cir. 1971); *Illinois Ruan Corp. v. N. L. R. B.*, 404 F.2d 274 (8th Cir. 1968) (Lay, J. dissenting).

The Third and Fifth Circuits have expressly declined to follow the *Interboro* doctrine. *See Mushroom Transport Co. v. N. L. R. B.*, 330 F.2d 683, 685 (3d Cir. 1964) (pre-*Interboro* case holding that for individual action to be concerted action "it must appear at the very least that it was engaged in with the object of initiating or inducing or preparing for group action or that it had some relation to group action"); *N. L. R. B. v. Northern Metal Co.*, 440 F.2d 881, 884–85 (3d Cir. 1971) ("*Interboro Contractors* appears to create a legal fiction, constructive concerted activity, . . .

[w]e are unwilling to adopt such a fiction."); *N. L. R. B. v. Buddies Supermarkets, Inc.*, 481 F.2d 714, 719 (5th Cir. 1973) ("[w]e are persuaded . . . that a statutory basis for the concerted activity rule announced in *Interboro* is questionable and hence we decline to follow that decision."). *See also N. L. R. B. v. Dawson Cabinet Co., Inc.*, 566 F.2d 1079 (8th Cir. 1977).

The Board applied the *Interboro* doctrine in the present case. This court has not considered the applicability of *Interboro*, but we have considered the question of whether individual complaints can amount to concerted action under the Act. In *N. L. R. B. v. Guernsey-Muskingum Electric Co-op, Inc.*, 285 F.2d 8 (6th Cir. 1960), three employees complained separately to company officials about a new foreman on their job. The complaints followed a discussion among the men where it was decided that each should complain in an effort to remove the foreman. The employees felt that one of their number should have been selected as foreman and further felt that the new foreman did not know the job and could not perform his duties properly.

As a result of the complaints, one of the employees was discharged. This court, in sustaining the Board's finding that the employees had engaged in protected concerted activity, recognized that individual action might be concerted action where the individual is in fact acting on behalf of, or as a representative of, other employees. 285 F.2d at 12–13. *See also, N. L. R. B. v. Okla-Inn*, 488 F.2d 498, 502–03 (10th Cir. 1973); *H. H. Wilson Corp. v. N. L. R. B.*, 414 F.2d 1345, 1349–50 (3d Cir. 1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970). Thus, under *Guernsey-Muskingum*, for individual action to be deemed concerted action it must be shown that the individual in fact was acting on behalf of, or as a representative of, other employees rather than acting for the benefit of other employees only in a theoretical sense.

The holding of *Guernsey-Muskingum*, although pre-*Interboro*, is consistent with the decisions of the Third and Fifth Circuits, which have rejected the *Interboro* doctrine. We, therefore, decline to adopt the holding in *Interboro*.

The extent to which *Interboro* has been used to expand the definition of concerted activity is illustrated by the Board's argument in the present case. In its brief, the Board contends there are two classes of cases in which individual action can be deemed concerted action under *Interboro*. Where it is clear that an employee is acting solely on his own behalf, an individual claim or complaint will be considered to be concerted action only if the claim or complaint has a "colorable basis" in the collective bargaining agreement. *Snap-On Tools Co.*, 207 N.L.R.B. 238 (1973). However, where an individual employee makes a claim or complaint which relates not only to that employee's situation, but that of his fellow employees as well, he will be considered to have engaged in concerted activity irrespective of whether the claim or complaint has merit under the collective bargaining agreement, whether the employee has relied upon the collective bargaining agreement, or whether the employee has any rights under the collective bargaining agreement. *ARO, Inc.*, 222 N.L.R.B. 243 (1976); *John Sexton Co.*, 217 N.L.R.B. 80 (1975).

We think this expansive reading of the concerted activity clause of § 7 goes too far. Indeed, the position of the Board in the present case extends further the reach of the *Interboro* doctrine. The employee in *Interboro* complained and because of his complaints was terminated. Williams was terminated because of a lack of work and then complained about the order of her discharge. However, Williams' complaints in no way caused her termination and were voiced only after the decision to terminate her had been made.

Williams had no contractual right to recall or re-employment. The Company could have denied her re-employment for any reason or for no reason at all. That the Company denied Williams re-employment due to her repeated complaints, after reasonable efforts by the Company to explain its policy to her, in no way supports a

conclusion that the Company violated § 8(a)(1) of the Act. To hold otherwise could effectively prevent an employer from using the temporary/probationary period to determine whether a particular employee is suitable for employment without the possibility of being subjected to an unfair labor practice charge. The Board's decision and order creates, in effect, grievance rights for temporary/probationary employees, by the filing of an unfair labor practice, which do not exist under the collective bargaining agreement. Nothing in the language of the Act, nor its legislative history, evidences an intent on the part of Congress so to intrude into the day-to-day operation of an employer's business.

■ We choose to follow our holding in *Guernsey-Muskingum* and the decisions of those courts that have rejected the *Interboro* doctrine. For an individual claim or complaint to amount to concerted action under the Act it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement.

The record in the present case fully supports the finding of the Administrative Law Judge that the complaints of Williams were made in her own behalf in a purely personal capacity and that while the complaints may have related to the status of Williams' fellow janitor-cleaners, they do not amount to protected concerted activity. Williams testified as follows:

"Q. Mrs. Williams, you then were just acting on your own behalf?

A. I was.

Q. Let me also understand, Mrs. Williams that as far as you were concerned, the question you were raising regarded a seniority right that you claim existed under this contract?

A. Right.

Q. And that the employee who worked the shortest period of time was not laid off?

A. That's right.

Q. But it's also your understanding that you did not have any seniority, and that no employee had any seniority until he had worked 90 days, which I believe you just testified a few minutes ago?

A. Yes, sir."

III

Counsel for the Board advised the court that due to heavy snow he would be unable to travel from Washington to Cincinnati for oral argument in this case. At the invitation of the court, counsel submitted a supplemental statement in lieu of oral argument and a list of authorities in support of the decision and order of the Board.[3] We have considered those authorities and find them not to be controlling in the present case.

■ In his supplemental statement, counsel for the Board relies upon the proviso in § 9(a) of the Act, 29 U.S.C. § 159(a), that "any individual or employee or a group of employees shall have the right at any time to present grievances" to their employer. The Board contends the legislative history of this proviso makes it clear that Congress intended to establish an affirmative right to complain for individual employees at least as broad as the doctrine enunciated in *Interboro*. The Board asserts that it is inconceivable that Congress meant to create a right under § 9(a) and exclude it under § 7.

The proviso in § 9(a) relates to the right of employers and employees to resolve disputes between them directly even though there is a selected or designated collective bargaining representative, without rendering the employer liable for breach of the duty to bargain under § 8(a)(5) of the Act,

3. The authorities included *Eastex, Inc. v. N. L. R. B.*, 437 U.S. 556, 98 S.Ct. 2505, 57 L.Ed.2d 428 (1978); *N. L. R. B. v. Iron Workers*, 434 U.S. 335, 98 S.Ct. 651, 54 L.Ed.2d 586 (1978); *N. L. R. B. v. Pipefitters*, 429 U.S. 507, 97 S.Ct.

891, 51 L.Ed.2d 1 (1977); Summers, *Individual Rights in Collective Agreements and Arbitration*, 37 N.Y.U.L.Rev. 362, 384 (1962); Gorman, *Basic Text on Labor Law 300* (West 1966).

29 U.S.C. § 158(a)(5). *Emporium Capwell Co. v. Community Organization,* 420 U.S. 50, 61 n. 12, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975). Nothing in § 9(a) expands the definition of concerted action in § 7, nor does it serve to define § 7 rights by illustration. Furthermore, the proviso in § 9(a) arguably may amount to an exception to the concerted action requirement of § 7, and not a statement of its scope. *Black-Clawson Co., Inc. v. International Association of Machinists,* 313 F.2d 179, 185 (2d Cir. 1962). We conclude that the language of § 9(a) is not controlling on our determination as to what constitutes concerted action under § 7.

The Board also relies upon the well-recognized rule that § 7 of the Act should be liberally construed. In *Iron Workers,* the Supreme Court said:

> The Board's resolution of the conflicting claims in this case represents a defensible construction of the statute and is entitled to considerable deference. Courts may prefer a different application of the relevant sections, but "[t]he function of striking that balance to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review." *NLRB v. Truck Drivers Union,* 353 U.S. 87, 96, 77 S.Ct. 643, 1 L.Ed.2d 676 (1957); *NLRB v. Insurance Agents,* 361 U.S. 477, 499, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960).

434 U.S. at 350, 98 S.Ct. at 660.

Although judicial review is limited, we conclude that the decision and order of the Board in the present case is not supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. N. L. R. B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Enforcement of the decision and order of the Board is denied.