**UNITED PARCEL SERVICE, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 80–1114.

United States Court of Appeals, Sixth Circuit.

July 17, 1981.

Robert M. Vercruysee, Virginia F. Metz, Butzel, Long, Gust, Klein & VanZile, Detroit, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Ralph Simpson, N. L. R. B., Washington, D. C., Bernard Gottfried, Director, Region 7, N. L. R. B., Detroit, Mich., for respondent.

Before WEICK and KEITH, Circuit Judges, and PORTER *, District Judge.

ORDER

This case is before the court on petition of the United Parcel Service for review of an order of the NLRB issued against it on February 5, 1980, and reported at 247 NLRB No. 134. The Board has filed a cross-petition for enforcement of this order.

---

* Hon. David S. Porter, Senior District Judge for the Southern District of Ohio, sitting by designation.

United Parcel Service Company is an interstate common carrier engaged in motor freight transportation and delivery. It has a facility at Roseville, Michigan for transshipping parcels. The union represents the company's employees at this and at other terminals.

One of the trucks or tractors delivering parcels to the company's Roseville facility is known as the Mount Pleasant Trailer. On arrival, this trailer, which has a sliding or roll-top back door, is routinely parked on the level near the loading dock while the driver breaks the seal, opens the door and checks the position of the load. The door is always open as the driver starts backing the trailer down to the platform-dock for unloading.

The dock is about six feet above ground level. The platform about two feet wide and three feet from the ground is immediately adjacent to the dock. When parked for unloading, the back bumper of the Mount Pleasant Trailer rests against the foundation of the platform. Above the bumper, there is a "well imprint" approximately six to eight inches wide between the trailer and the platform.

The ground slopes downward to the dock platform and, on occasion, the sliding door of the Mount Pleasant Trailer shuts as the truck is backing up. When this happens, an unloader generally opens the door at the dock-platform. This requires the employee to step onto the platform, bend over and reach down into the well area to pull up the door. Because of the cramped space, maneuverability is limited. The evidence below showed that packages have fallen from the Mount Pleasant Trailer as its door was being reopened at the dock, and several times an employee has been hit by these packages. The maximum weight of individual packages transported from the trailer is about 50 pounds. The average weight of the packages is about 10 to 15 pounds, and ordinarily the trailer is filled to about 20% of its capacity.

On January 3, 1979, the Mount Pleasant Trailer arrived at Roseville late and neither Katherine Carette, a pre-load supervisor,

nor any of the loading dock employees on duty saw the driver break the seal and unlock the door of the trailer. Employees Aiello, Gregory Pozel and William Lowery first saw the trailer as it backed up to the dock with its door shut. After the trailer came to a halt, Carette directed Aiello to open the door; he refused on the grounds that it was sealed and locked and that the opening was "unsafe". Carette examined the trailer from the dock, determined that it was not sealed or locked, and again ordered Aiello to open it. Aiello refused once more, asserting that it was dangerous. At this point Pozel, seeking to avert further conflict, stepped down, reached into the well, unlatched the door and opened it. Aiello assisted in the operation. About an hour after the incident, the night manager and the supervisors summoned Aiello and William Wise, a union committeeman, to the office. The supervisor related that Aiello had refused an order to open the door of the trailer. In his defense, Aiello stated that "he felt it was unsafe for him to open up the door and that he thought he shouldn't do it". At that point, the manager and supervisor gave Aiello a warning notice charging him with "flagrant disobeying of orders". Aiello had earlier been charged with disciplinary warnings by the company and allegedly harassed his female supervisor on previous occasions. The company took the position that the January 3rd incident was a continuation of Aiello's disruptive conduct.

On January 9, Aiello prepared a grievance about the January 3 incident and the disciplinary warning. He was assisted by employee Lowery. The grievance stated:

A warning notice was issued to me on Wednesday, January 3, on grounds of insubordination, and I wish to disprove this accusation with reasons listed below. According to the union contract, an employee under no circumstances will be required or assigned to engage in any activity involving dangerous conditions of work or danger to a person or property; therefore, on the day in question, I hesitated momentarily to open a trailer door

because of the distance between the door and trailer but—(1) proceeded to finish the work required upon opening said door and, (2) was not given the notice until the *end* of the shift after all work had been completed. I would now request that a demonstration be made in order to substantiate my claim that a hazardous situation clearly exists.

By January 11, Divisional Manager Palazzolo knew that Aiello had filed a grievance and telephoned him at home to discuss the grievance. Palazzolo was allegedly upset about the grievance and conveyed this to Aiello, telling him that "maybe [he] should start looking for another job." Palazzolo scheduled a meeting with Aiello for the next morning.

On January 11, William Range, a pre-load supervisor, chastised Aiello for talking to employees on duty after he had already clocked out. In the early morning hours of January 12 the night manager arranged a meeting with Aiello, supervisor Range and union steward Washington at which Aiello was charged with excessive talking and ordered him to remain silent throughout the night—not to talk or sing with other employees. Later in the morning, Aiello met as scheduled with Palazzolo. At this meeting the company gave Aiello a second warning notice. It charged him with "flagrant disobeying of orders, second flagrant in a two-week period". Aiello's disobedience consisted of his talking on January 11 and 12. Palazzolo noted that Aiello now had two disciplinary warnings and cautioned that a third would result in automatic dismissal. Palazzolo made it clear that if Aiello did not want to abide by the company's rules he should look elsewhere for work or become self-employed. Aiello protested that the two warnings were unfair and should be removed from his record. He later testified that Palazzolo responded that the warning notices would not be removed but that, if Aiello resigned, other employers would not be advised of the warnings. Aiello refused to resign, and Palazzolo admonished him to be a good employee.

On these facts the Board found that Aiello was engaged in protected concerted activity when he exercised his contractual right of refusing to perform an assigned task which is arguably dangerous and that therefore the company violated Section 8(a)(1) of the Act by issuing a disciplinary warning for such refusal. The Board also found that the company violated Section 8(a)(1) by changing Aiello's working conditions and subjecting him to disparate treatment, issuing a second disciplinary warning based on such disparate treatment and twice threatening to discharge Aiello, all in retaliation for his having filed a grievance protesting an assertedly dangerous job assignment and a disciplinary warning which resulted from his refusal to execute it.

The Board's order required the company to cease and desist from the unfair labor practices found and from, in any like or related manner, interfering with, restraining or coercing employees in the exercise of their Section 7 rights. Affirmatively, the order directs the company to expunge from Aiello's employment records the disciplinary warnings of January 3 and 12, 1979, and all references to them, and to post an appropriate notice.

The controlling decision here is *Aro, Inc. v. NLRB*, 596 F.2d 713 (6th Cir. 1979) in which Judge Phillips held:

> For an individual claim or complaint to amount to concerted action under the Act, it must not have been made solely on behalf of an individual employee, but it must be made on behalf of other employees or at least be made with the object of inducing or preparing for group action and have some arguable basis in the collective bargaining agreement. *Id.* at 718.

We do not find that substantial evidence supports the Board's finding that Aiello refused to perform his duties on January 3 because of a complaint "made on behalf of other employees or at least be made with the object of inducing or preparing for group action." Aiello had a poor record of previous job performance; there was evidence that he refused to perform his work on January 3 solely because of personal

problems with his female supervisor; and there was evidence that he continued to be a disruptive influence at the plant after the January 3 incident.

Accordingly, the Board's petition for enforcement of its order is hereby denied.