MUSIC CITY SERVICE, INC., d/b/a
Gray Line Tours, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 81–1669.

United States Court of Appeals,
Sixth Circuit.

Argued March 16, 1983.

Decided April 1, 1983.

Rehearing and Rehearing En Banc
Denied June 16, 1983.

Richard A. Brackhahn, Ray Leffler (argued), Brackhahn, McNeil, Swain & Hughes, Memphis, Tenn., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, Marck McCarty (argued), N.L.R.B., Washington, D.C., for respondent.

Before CONTIE and KRUPANSKY, Circuit Judges, and BALLANTINE,* District Judge.

## ORDER

This matter is before the Court on the petition of Music City Service, Inc., d.b.a. Gray Line Tours (hereinafter Music City) for review of an order of the National Labor Relations Board (Board).[1] The Board has cross-applied for enforcement of its order.

The record discloses that Music City is a corporation with an office and place of business in Nashville, Tennessee. Music City is engaged in the business of guided sightseeing tours and group passenger transportation services.

At the time of the events in issue, Music City's employees were not organized in a union and Music City was not party to a collective bargaining agreement.

---

* The Hon. Thomas A. Ballantine, United States District Judge for the Western District of Kentucky, sitting by designation.

1. The Board's Decision and Order is reported at 258 NLRB 187 (1981).

The charging party below, Mike Harrell (Harrell), was hired by Music City in February of 1979 as a bus driver and tour guide. On June 15, 1979, Harrell and another employee met with the president of the Amalgamated Transit Union, Local 234 (Union) in an effort to organize a union at Music City's Nashville operation. Thereafter, Harrell supplied the Union with the names and addresses of other full-time employees.

Harrell continuously, until his discharge on April 25, 1980, let it be known that he favored a union and espoused the benefits of union representation to other employees. In April of 1980, Harrell signed a Union representation card.

On April 25, 1980, Harrell was discharged following a confrontation with the executive vice-president of the company, Richard Hodges (Hodges). The confrontation arose out of Harrell's complaint that the heater in the bus he was assigned that day was inoperative and the passengers had complained of the resulting cold.

Three days subsequent to his discharge Harrell filed a charge with the National Labor Relations Board asserting that his discharge was in retaliation for "activities for the mutual aid and protection of other employees." This charge was amended on May 30, 1980 to include the allegation that his discharge also resulted from his "activities on behalf of the Amalgamated Transit Union."

On June 12, 1980, the Regional Director of the Board issued a "Complaint and Notice of Hearing" alleging that, in discharging Harrell, Music City had violated §§ 8(a)(1) and (3) of the National Labor Relations Act (Act), 29 U.S.C. §§ 158(a)(1) and (3). A formal hearing was conducted before an Administrative Law Judge (ALJ) on November 24 and 25, 1980 and the ALJ issued findings of fact, conclusions of law and a recommended order on April 20, 1981.

The ALJ found that Music City had violated §§ 8(a)(1) and (3) and recommended that the company be ordered to cease and desist from engaging in like or related conduct and offer Harrell immediate reinstatement with back pay. Music City filed exceptions to the ALJ's decision but the Board determined to affirm the rulings, findings and conclusions of the ALJ and adopted her recommended order.

Sections 8(a)(1) and (3) of the Act provide, in pertinent part:

(a) It shall be an unfair labor practice for an employer

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7[2]

\*     \*     \*     \*     \*     \*

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization:

The Board concluded that Harrell had been terminated because of his efforts to organize a union at Music City's Nashville operation and that this violated § 8(a)(3), and, derivatively, § (a)(1).

The crucial evidence with respect to this conclusion is the testimony of Kathy Baucom Tinkham (Tinkham), an acquaintance of Harrell. Tinkham was employed as a sales agent of Music City from January of 1979 to September of 1980 when she voluntarily terminated her employment under discordant circumstances. The substance of Tinkham's testimony was summarized by the ALJ:

On either Friday, April 18, or Tuesday, April 22, 1980, at about 3:30 p.m., Kathy Baucom Tinkham, Respondent's sales agent, received from a customer a telephoned inquiry calling for information from a consolidated air tour manual which was then on the desk of Darlene Hancock, Hodges' secretary. Tinkham asked the customer to hold the phone, and went over to Hancock's desk, where she was not sitting at the time, in order to find the manual. Tinkham's desk was

---

**2.** Section 7, in turn, guarantees employees, *inter alia,* the "right to self-organization, to form, join, or assist labor organizations ... and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

10 or 12 feet from Hodges' office, but Hancock's desk was in front of that office. At this time, Hodges' office door was slightly ajar, and while looking for the manual, Tinkham was able to see into the office and overhear what was being said there. She heard Hodges tell Kay, [Connie Kay, Harrell's supervisor] in Hoover's presence [Lonnie Hoover, a company vice-president], that Kay should find a reason to get rid of Mike Harrell because of the union. Immediately after hearing Hodges make this remark, Tinkham found the book she was looking for and returned to her desk to resume her telephone conversation with the customer. Hodges, Kay and Hoover all denied that this conversation occurred but the ALJ credited Tinkham's testimony.

Obviously, if Tinkham's testimony is accepted, there is substantial evidence to support the conclusion that Harrell was terminated in violation of the Act. It is "the function of the Board to resolve questions of fact and credibility," *NLRB v. International Union of Operating Engineers,* 500 F.2d 48, 49 (6th Cir.1974), and "[t]his Court will not normally disturb the credibility assessments of the Board or the Administrative Law Judge who has observed the demeanor of the witnesses." *NLRB v. Magnetics International, Inc.,* 699 F.2d 806 at 813 (6th Cir.1983).

Thus, although this Court questions the coincidence that Harrell located a witness who, by the most fortuitous circumstances, happened to be momentarily present to overhear Hodges' crucial inculpatory statement, the Court is not free to substitute its findings for those of the Board. Accordingly, the Court, with reluctance, concludes that the Board's finding that Harrell was discharged because of his union activity is supported by substantial evidence.

The Board also concluded that Music City terminated Harrell, in part, because of other protected activity and that this constituted separate violations of § 8(a)(1).

Hodges testified that he had discharged Harrell for several reasons. Among the reasons were that Harrell constantly complained directly to the owner of the company about a vice-president of the company, in disregard of the company's table of organization and policy, and that Harrell's complaints concerning the inoperative heater on the bus were unjustified. The Board concluded that Harrell, in voicing these complaints, was engaged in concerted activity within the scope of a § 7 of the Act and, accordingly, that his discharge because of this activity was in violation of § 8(a)(1).

Recently, in examining the requirement that an employee's action be "concerted" in order to bring it within the protection of the Act, this Court stated:

> An individual employees' complaint is "concerted" if it is related to group action for the mutual aid or protection of other employees. *Signal Oil & Gas Co. v. NLRB,* 390 F.2d 338, 342–43 (9th Cir. 1968). Either the individual employee "is in fact acting on behalf of, or as a representative of, other employees," *NLRB v. Geurnsey-Muskingum Electric Cooperative, Inc.,* 285 F.2d 8, 12–13 (6th Cir.1960), or his claim "must be made with the object of inducing or preparing for group action," *Aro, Inc. v. NLRB,* 596 F.2d 713, 718 (6th Cir.1979). It is not necessary that the individual employee be appointed or nominated by other employees to represent their interests.

*NLRB v. Lloyd A. Fry Roofing Co., Inc.,* 651 F.2d 442, 445 (6th Cir.1981).

While Harrell asserted that his complaint regarding the company vice-president was representative of the sentiment of other bus drivers, there is no supporting evidence that Harrell was, in fact, advancing the interests of other employees. In *City Disposal Systems, Inc. v. NLRB,* 683 F.2d 1005 (6th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1496, 75 L.Ed.2d 928 (1983), a truck driver refused to drive an allegedly unsafe truck and inquired as to the "safety of the men." This Court concluded that the driver's comment concerning other employees, standing alone, did not satisfy the substan-

tial evidence requirement. Similarly, in this case, Harrell's self-serving conclusory statements that he was expressing the feeling of other employees does not constitute substantial evidence that he was engaged in concerted activity. The same is true with respect to Harrell's complaints regarding the allegedly defective heating on a bus.

Accordingly, the Board's findings of § 8(a)(1) violations with respect to Harrell's complaints are not supported by substantial evidence. However, the Board's order is fully enforceable on the basis of the § 8(a)(3) violation and derivative violation of § 8(a)(1). Although, if writing on a clean slate, this Court may have concluded otherwise, the order of the Board must be, and hereby is, enforced.